## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **DEREK HANGER,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 7:22CV00036 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **HAROLD W. CLARKE,** | ) | JUDGE JAMES P. JONES |
| **DIRECTOR VDOC,** | ) | |
| | ) | |
| Respondent. | ) | |

*Dale R. Jensen, DALE JENSEN, PLC, for Petitioner; Katherine Quinlan Adelfio, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Respondent.*

Petitioner Derek Hanger, a Virginia inmate proceeding by counsel, has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, challenging his 2019 state convictions for distribution of child pornography. Respondent Clark has filed a Motion to Dismiss, to which Hanger has responded. Upon review of the record and pleadings, I find that the decision of the Supreme Court of Virginia denying Hanger's state habeas petition was based on a reasonable determination of the facts and a reasonable application of federal law. Accordingly, I must deny Hanger's claim.

I.

Hanger was indicted by a grand jury in Albemarle County, Virginia, on April

2, 2018, for one count of distribution of child pornography, first offense, and four

counts of distribution of pornography, second or subsequent offense, in violation of

Va. Code Ann. § 18.2-374.1:1(C)(i).  Hanger lived in Augusta County, Virginia,

where his desktop computer was located, and the images were received from his

computer through peer-to-peer software by an Albemarle County detective and by

officers in the City of Harrisonburg, Virginia.  Hanger's trial counsel negotiated a

plea agreement in which the second-offense charges were reduced to first offense

charges, and in exchange for Hanger's *Alford* plea[1] to the five first-offense

distribution charges, Augusta County agreed not to bring charges, and the prosecutor

in Albemarle County agreed that if any child pornography charges were filed by

Harrisonburg or other jurisdictions for an offense date before May 22, 2019, that

Hanger's time in Albemarle County would run concurrently with any time Hanger

received for those charges in the other jurisdiction.  Finally, the agreement stipulated

that Hanger would receive 10 years on each charge, with all 10 years suspended on

the first count, and 5 years suspended on each of the remaining four counts, for an

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970) (upholding the constitutionality of a court accepting a guilty plea from a person who denies committing the crime, but who also believes the evidence would be sufficient to support a conviction and does not wish to risk a trial).

effective sentence of 20 years imprisonment.  Br. Supp. Mot. Dismiss Gov Ex. 2,

Plea Agreement 2, ECF No. 12-2.

At a hearing held June 12, 2019, Hanger entered his *Alford* plea to the five

counts.  The prosecution summarized the evidence supporting the case as follows:

> February 16th through February 17th, Detective Wells with the Albemarle County Police Department, as part of the Internet Crimes Against Children Task Force, was performing an investigation as it relates to downloading and distributing child pornography. Specifically using the BitTorrent network in a single source download, meaning that he was downloading files specifically from one computer as opposed to numerous computers across the network. He was able to identify numerous images and videos of child pornography.  He was able to track the source of these distributions to a specific IP address and the police department was able to obtain a search warrant. Ultimately, that address came back to being the residence of Derek Hanger in Augusta County or Waynesboro City.  A search warrant was obtained and executed.  Mr. Hanger was present and spoke to the police . . . and freely admitted that he had been downloading and viewing child pornography.  This plea agreement takes into account his cooperation and that the Commonwealth is agreed that while it is a twenty (20) year active sentence, it's not a twenty (20) year mandatory minimum active sentence which is why we waived the second offense.  Augusta County, which is where he was actually located when these images were distributed, has agreed not to prosecute him in return for the fact that he is getting a twenty (20) year active sentence in Albemarle County. Other downloads were obtained from other jurisdictions, which is why that language is at the bottom of the plea agreement to make sure that he is not punished in other jurisdictions for the same distributions.

*Id.* Ex. 11, Hr'g Tr. 8–9, ECF No. 12-11.  Hanger acknowledged that this was the

Commonwealth's evidence.  *Id.* at 9.  Hanger's trial counsel then offered a

psychosexual evaluation prepared by Craig S. King, Psy.D., and a letter from

Michael C. Maschke of Sensei Enterprises, Inc., a digital forensics company. *Id.* at

13. By way of allocation, Hanger made the following statement to the court:

> I would like to begin, firstly, with an explanation as to why I chose to make an Alford plea, as I do not wish this choice to be misconstrued as being uncooperative with the prosecution, the Court or the court's normal procedures or that I am attempting in any way to shirk accepting full responsibility for my actions. It is my sincere belief that word intent was used in statute written by the Virginia State legislature with purpose. It has always been my assertion from the moment I spoke with law enforcement about these charges that I never intended to distribute child pornography. I believe we have already submitted to the court that no such activity has been shown to take place outside of what was acquired through the use of proprietary software available only to law enforcement. There has been no interaction or communication between me and any other individual at any time, via telephone, text, email or in person to acquire or distribute child pornography. The files being presented to the Court were downloaded by [me] and I take full responsibility for this action. These files were not downloaded from a website that is intended for the purposes of making child pornography available and is a website that hosts downloads typical to any normal site used by the general public, such as software, Hollywood movies, games, and so forth. In fact, it was in search of a particular high rated film that I even found this website. The website does not share images or any graphic description of what any download file would contain, and in text only, indicated in this instance only that it was of a pornographic nature. The files downloaded from this site were quite large and it was labeled as a porn compilation. I did not watch the videos immediately upon downloading as I was occupied with watching a movie at the time. However, once the full content of the download was eventually seen by me, the files were deleted. I also made an attempt to reinstall Windows on my computer to further make certain the files were eliminated. I believe it has also been submitted to the Court that there were no files on any of the devices seized for investigation that would have been available to any layperson that does not have access and the prerequisite knowledge of how to use special forensic software. In other words, for all intents and purposes, any such material had been permanently deleted as far [as] any layperson would be able to understand. Thus, it is my contention that it was out of

ignorance and not intent that this crime has been committed.  That said, I fully understand that a crime has been committed and that the defenses I have submitted have no precedent in any court proceedings in the State of Virginia as being viable defenses.  And, it is my understanding that I would hence more than likely not prevail if I were to take this case to trial.  Furthermore, I have been made aware that I would most likely risk facing even harsher sentencing than that offered in this plea deal. . . . I would like to make it clear that I completely understand that an action committed with intent or an action committed with ignorance can have the same consequences and the harm that has been caused to others is not diminished by my motivations.

*Id.* at 15–18.

Hanger further asked the court to run the five years concurrently on each of the four charges with active time, rather than running them consecutively. The judge accepted Hanger's pleas and the plea agreement.  She found him guilty on the five charges and imposed the agreed upon sentences for each.  The court did not run the sentences concurrently.

Before the trial court had entered the written judgment on its sentence, Hanger retained new counsel and filed a motion to reconsider running the sentences concurrently instead of consecutively.  The next day, July 3, 2019, the court entered the judgment, and on July 30, 2019, the court denied the motion for reconsideration. Hanger did not appeal.

On June 8, 2020, Hanger filed a timely petition for habeas corpus in the Supreme Court of Virginia, raising two issues: (1) ineffective assistance of counsel for her failure to recognize lack of scienter as a defense when advising Hanger to

plead guilty and (2) the imposition of cruel and unusual punishment for one convicted without proof of scienter. The court denied the petition. *Hanger v. Clarke*, No. 200776 (Va. Jan. 21, 2022) (unpublished). Hanger timely filed his § 2254 petition in this court three days later, raising the same issues.

## II.

A federal habeas court may grant relief on a state claim adjudicated on the merits in state court only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). The question is not whether the federal court believes the state court's decision is incorrect, but whether the decision was unreasonable, which is "a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Likewise, the federal court must presume that the state court's factual findings are correct, and this presumption can be overcome only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, the evidence that the federal court may consider is limited to that evidence in the state court record when the state court rendered its decision on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### A. Ineffective Assistance of Counsel.

When reviewing counsel's performance, courts apply a highly deferential standard. A petitioner must show that (1) counsel's performance was so deficient that she was not functioning as counsel guaranteed by the Sixth Amendment and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, a reviewing court strongly presumes that counsel rendered adequate performance and that all decisions were made in the exercise of reasonable judgment. *Id.* at 690. The *Strickland* standard is doubly deferential in the context of a habeas petition because the deferential standard of review required by § 2254 overlaps with the deferential standard under *Strickland*. *Woods v. Etherton*, 578 U.S. 113, 117 (2016). In other words, federal courts on habeas review are to give the benefit of the doubt to both the state court and the defense attorney. *Id.* at 117.

Hanger identifies several allegedly unreasonable findings of fact upon which the state habeas court based its decision, namely (1) its finding that Hanger had enough time to discuss any possible defenses he might have with counsel; (2) its finding that Hanger admitted he had been downloading and viewing child pornography; (3) the court misstated and thus misconstrued his comment to police, wherein he admitted that opening "one link leads to another link to another link" Va. Sup. Ct. R., Sealed Rep. 3, ECF No. 15; (4) its finding that Hanger admitted spending

the weekend binging on child pornography; and (5) its finding that Hanger's statements to police indicated that he had used uTorrent software in the past and knew how it worked. In addressing these findings, the question is not whether the "federal court believes the state court's determination under the *Strickland* standard was incorrect, but whether that determination was unreasonable — a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotation marks and citation omitted). "If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). In § 2254(d), Congress codified the view that habeas corpus relief is a "guard against extreme malfunctions in the state criminal justice systems." *Id.* at 102–103 (citation omitted).

It is my determination that the factual findings in question are not unreasonable for the reasons stated hereafter.

During Hanger's plea colloquy with the court, Hanger indicated that he had discussed the charges and elements with his attorney and that he had enough time to discuss with her any possible defenses. Hr'g Tr. 7, ECF No. 12-11. "Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992). That alone is sufficient to support this factual determination. It is argued that Hanger did not know about the scienter defense, so

he could not have known at the time of the plea that it had not been discussed. However, Hanger's statements during allocution suggest that he had discussed intent with his attorney:

> Thus, it is my contention that it was out of ignorance and not intent that this crime has been committed.  That said, I fully understand a crime has been committed and that the defenses I have submitted have no precedent in any court proceedings in the State of Virginia as being viable defenses.

Hr'g Tr. 17, ECF No. 12-11.  A reasonable inference can be drawn from this statement that Hanger had discussed intent with his attorney and understood the limitations on the viability of that defense.  Accordingly, this was not an unreasonable finding of fact by the state habeas court.

Although Hanger maintained that he did not know he had downloaded child pornography at the time it was downloaded, he admitted in his police interview that he subsequently discovered that he had downloaded it, and he admitted that he viewed at least some of it:

> I started — it starts, you're just a guy looking at things on the internet, and then, one link leads to another link leads to another link, and um, you know . . . that happened.  That did happen.  I guess I'm gonna have to admit it 'cause I gotta own up.  I'm the kinda person that would, and I was so — the problem was — when things are like — you know — it starts — uh — it was a spiral that I realized I was going down and when I saw some content that was abusive — it — it kinda ruined me.  And it was sort of just one weekend of like oh my gosh look at all this stuff suddenly I saw all this stuff that I could look at and I was just like downloading and looking at it like . . .
>
>      . . . .

-9-

> . . . [S]o I saw normal links and I started looking at em, and, but then I saw some stuff that was really disturbing where it—it didn't seem consensual and it didn't seem — you know — and I know they're, they're young — and some things are just in groups and you don't know what you're downloading when you're downloading to look at it, you don't even know, it's just a mass.

Pet. Ex. 3, Tr. Feb. 21, 2018, Interview 9–10, ECF No. 1-3.  Although counsel offers another interpretation of what Hanger meant when he made those statements to police, I cannot find that the state habeas court's interpretation of Hanger's statements as a confession of downloading and viewing child pornography is unreasonable.

As to the third alleged unreasonable factual finding, while the police interview transcript stated, "one link leads to another link leads to another link," *id*. at 9, the psychosexual evaluation of Dr. King stated that Hanger had admitted in the police interview that opening "one link [of child pornography] leads to another link to another link."  Va. Sup. Ct. R., Sealed Evaluation 3, ECF No. 15.   The state habeas court repeated Dr. King's bracketed insertion relating to child pornography. That interpretation of Hanger's statement is supported by Dr. King's clinical interview of Hanger, in which Hanger admitted becoming addicted to regular pornography by 2014, and that he "*repeatedly* encountered child pornography and each time he was shocked by what he saw."  *Id.* at 9 (emphasis added).  Hanger stated that he never saved any child pornography to his computer; rather, he looked at it and then deleted

it.  I cannot find that the state habeas court was unreasonable in finding that Hanger admitted that one link of child pornography led to another.

The above-cited portions of Hanger's statement to police clearly support that Hanger spent the weekend watching pornography.  It was not unreasonable for the state habeas court to determine that a portion of the binge-watching included the ample child pornography downloaded with the other material.

Finally, although Hanger denied knowing the details about how uTorrent software works, he made statements from which a reasonable factfinder could infer that he knew downloaded files could be uploaded by other internet users.  When advised by Detective Wells that Hanger had made his files available on the internet, and that Wells had downloaded those files from him, Hanger said, "[T]hat's the nature of the way that thing works though.  The moment it — it gets to 100% it starts to do an upload which is why I — I stopped."  Tr. Feb. 21, 2018, Interview 14, ECF No. 1-3.

Hanger alleges that counsel was ineffective in her research on potential defenses, particularly scienter, and in advising him to plead guilty.  These allegations are based upon the existence of a case interpreting the federal child pornography statute — *United States v. Dillingham*, 320 F. Supp. 3d 809 (E.D. Va. 2018).  While the federal statute is similar to the Virginia statute under which Hanger was charged, they are not identical.  More importantly, federal decisions interpreting federal law

are not binding on state courts.   Finally, the facts and inferences one could reasonably draw from the evidence are different in Hanger's case.   Some of those inferences have been identified in the factual findings of the habeas court, discussed above.   Others will be discussed below.

The state habeas court did not find any deficient performance in advising Hanger to accept the plea agreement, and that conclusion is not an unreasonable application of federal law.  *Strickland* instructs the use of a deferential standard when evaluating advice of counsel; a wide range of conduct falls within the range of reasonable professional conduct.   466 U.S. at 689.   The burden is on Hanger to demonstrate that counsel's advice was not professionally reasonable under the circumstances.  *Id.*   There is nothing unreasonable in counsel advising Hanger that his scienter defense was not likely to succeed, because a jury could accept the Commonwealth's version of the evidence rather than Hanger's version.   Indeed, Standard 4-5.1 states that a defense lawyer "should advise the client with candor concerning all aspects of the case, including an assessment of possible strategies and likely as well as possible outcomes."  Standards for Criminal Justice 4-5.1 (Am. Bar Ass'n 2015).   That advice included the ability to prosecute Hanger in any jurisdiction where the pornography was possessed, stored, or received by another from him.  Va. Code Ann. § 18.2-374.1:1(G).

Assuming, for the sake of argument, that a jury believed Hanger's testimony that he did not know child pornography was being downloaded until after it occurred, that does not mean he was unaware of the content of those files at the time they were later transferred to Detective Wells and others. By his own testimony, he did not look at the material immediately, but he did look at the material a short time later. Although he ultimately deleted the images, until he deleted them from the default shared folder created by the uTorrent software, including while he was watching the images, they were capable of being transported to any other user seeking the material, including the law enforcement officers. Once he had looked at the images and determined what they were, his possession thereafter was knowing.

Further, the factfinder would not have to accept Hanger's denial of knowledge as truthful. Whether a person knowingly possessed an item is a question of fact for the jury, which must be decided based upon all the facts and circumstances. The circumstances would include Hanger's statements to Detective Wells,[2] the downloading of child pornography the weekend of February 11, 2018, as well as

---

[2] Hanger argues that his statements to Detective Wells should not be considered because he had not received the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966), before questioning. This argument assumes that the trial court would have agreed that Hanger's statements were obtained during custodial interrogation if a motion to suppress had been filed. No such motion was filed, however, nor was failure to file such a motion asserted as ineffective assistance of counsel in Hanger's state and federal petitions. Accordingly, it must be assumed that Hanger's statements to Wells were part of the totality of circumstances considered by counsel in recommending the plea.

February 16 through 18, and Hanger's efforts to clean his hard drive of evidence on February 18, which could be interpreted as evidence of his guilty knowledge.

The same analysis applies to Hanger's intent to distribute. Intent, just like knowledge, may be inferred from the facts and circumstances surrounding the events. *Johnson v. Commonwealth*, 669 S.E.2d 368, 378 (Va. Ct. App. 2008). The factfinder may infer that a person intends the natural and probable consequences of his acts. *Id.*

According to Hanger, his attorney recommended the plea agreement and explained her reasons for the recommendation. Thereafter, he decided for himself to enter an *Alford* plea. Hr'g Tr. 7, ECF No. 12-11. Because Hanger has failed to show any deficient performance by his attorney, the first part of the *Strickland* analysis fails.

Hanger fares no better on the prejudice prong of the *Strickland* analysis. In the context of a plea agreement, to satisfy the prejudice requirement, petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Such prejudice is judged by an objective standard, meaning that the petitioner must convince the court that a decision to reject the plea bargain would have been reasonable and rational under the circumstances. *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). Hanger has not made that showing.

As originally charged, four of the counts would have had mandatory minimums of five years and a maximum of 20 years each.  In addition, because the police found many different images of child pornography, more charges could have been filed in Augusta County and Harrisonburg.  With the evidence sufficient to support a conviction, it is not objectively reasonable for Hanger to claim that he would have taken his chances at trial, risking a higher sentence and the possibility of additional prosecution in other jurisdictions.  As Respondent points out, when Hanger obtained current counsel, he filed a motion for reconsideration of his sentence, not a motion to withdraw his guilty pleas.  This suggests that Hanger's overriding concern is the length of his sentence.  Although he may be unhappy with 20 years, it is not objectively reasonable to believe he would risk a higher sentence for the small possibility of a favorable jury verdict.

## B.  Cruel and Unusual Punishment.

Hanger asserts that his Eighth Amendment right to be free of cruel and unusual punishment, made applicable to the states through the Fourteenth Amendment, is violated by his incarceration for a crime for which he lacked the requisite scienter.  The state habeas court held that Hanger's *Alford* plea waived the right to raise this issue.  That decision is not an unreasonable application of federal law.  A valid guilty plea relinquishes any claim that would contradict the admissions necessarily made by entry of a voluntary guilty plea.  *Class v. United States*, 138 S.

Ct. 798, 805 (2018). An *Alford* plea is a type of guilty plea and has the same preclusive effect as a guilty plea, waiving all defenses except those that are jurisdictional. *Cobbins v. Commonwealth*, 668 S.E.2d 816, 820 (Va. Ct. App. 2008).

The state habeas court also held that Hanger's claim of actual innocence was not cognizable under state habeas law. Of course, state habeas law does not determine the parameters of federal habeas law. The Supreme Court has not recognized a freestanding claim of actual innocence for federal habeas, either. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). However, a claim of actual innocence, accompanied by newly discovered evidence, may create a gateway through which a federal claimant may avoid a procedural default or time bar on an otherwise precluded constitutional claim. *Schlup v. Delo*, 513 U.S. 298, 316 (1995). Hanger is not attempting to use actual innocence as a gateway. He is attempting to combine the Eighth Amendment with a claim of freestanding actual innocence to make an end-run around his prior *Alford* plea.

Before a trial court accepts an *Alford* plea, the court determines (1) that a defendant understands the nature of the plea and its consequences, enters the plea voluntarily, and believes that it is in his best interest to do so; and (2) that there is a factual basis supporting the plea, as there was in this case. *Alford*, 400 U.S. at 37–38. Allowing the petitioner to collaterally attack an *Alford* plea solely because of his claimed innocence would undermine the process and render prosecutors unlikely

to accept such pleas in the future.  There is no precedent for such a claim, and I decline the invitation to create one.

### III.

For the reasons stated, I will grant Respondent's Motion to Dismiss because the state habeas opinion was not based on an unreasonable determination of the facts nor an unreasonable application of federal law.

I decline to issue a certificate of appealability because Hanger has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not find the court's procedural ruling to be debatable or wrong.

A separate Final Order will be entered herewith.

DATED:  February 28, 2023

/s/ JAMES P. JONES
Senior United States District Judge